## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT CINCINNATI

| | |
|---|---|
| **JUST CAUSE MARKETING, INC.**, individually and on behalf of all others similarly situated, PO Box 200 New Richmond, OH 45157 | Case No. |
| | Judge |
| Plaintiffs, | **CLASS ACTION COMPLAINT FOR DAMAGES** |
| v. | **JURY DEMAND ENDORSED HEREON** |
| **LENDIO, INC.** c/o Registered Agent Solutions, Inc., Registered Agent 838 Walker Road, Suite 21-2 Dover, DE 19904 | |
| Defendant. | |

Plaintiff Just Cause Marketing, Inc. ("Plaintiff" or "Just Cause"), individually and on behalf of all others similarly situated, bring this Class Action Complaint for Damages against Defendant Lendio, Inc. ("Defendant" or "Lendio") and make the following allegations based on personal knowledge as to facts about its own experiences, and on information and belief, as well as investigation of counsel, as to all others and state as follows:

1.      Just Cause is a corporation organized under the laws of the State of Connecticut that conducts a substantial portion of its business from Ohio located at 1436 Parkers Trace, New Richmond, Ohio 45157.

2.      Lendio is a corporation organized under the laws of the state of Delaware with a principal place of business located at 4100 Chapel Ridge Road, Suite 500, Lehi, UT 84043.

1

3.     Just Cause is a certified Woman Owned Small Business (WSOB) and certified as a Women's Business Enterprise Council (WBENC) business specializing in branding, innovation, packaging, and sustainable packaging for consumer products companies worldwide.

4.     Lendio markets itself as a "loan marketplace" which targets small businesses, especially women-owned businesses.[1]

5.     Just Cause is registered to conduct business in the State of Ohio, but Lendio is not.

## JURISDICTION AND VENUE

6.     This Court has jurisdiction over the matter pursuant to 28 U.S.C.§1332 because Plaintiff and Defendant reside in separate states, supplemental jurisdiction over any of Plaintiff's state-based claims pursuant to 28 U.S.C.§1367 is appropriate, and the matter in controversy exceeds $75,000.

7.     Venue is appropriate here pursuant to 28 U.S.C.§1391 given that a substantial part of the events giving rise to the claim occurred in Clermont County, Ohio.

## BASIS OF THE CLAIMS

8.     In the Spring of 2024, Just Cause sought out working capital in the form of a loan backed by the Small Business Administration ("SBA").

9.     In fact, Just Cause searched specifically for SBA loans on the internet.

10.    An SBA loan is often preferable to a typical bank loan given its intended use to support women-owned small businesses, lower interest rates, lower cost and the flexibility offered to businesses in terms of the use of the loan and repayment options.

11.    The loans are lower cost because they are guaranteed, at least in part, by the federal government which allows lenders to offer SBA loans at reduced risk.

---

[1] https://www.lendio.com/industry/women/ (last visited Dec. 2, 2024).

12.     SBA loans are offered to foster small business growth by providing relatively easy access to capital while not overburdening small businesses with high interest rates that might otherwise hamper business growth.[2]

13.     While searching online for SBA loans, Deb Adams ("Adams"), the Plaintiff's principal, discovered Lendio and its SBA loan offers.

14.     Lendio aggressively markets its offerings online as it is frequently the first option returned in an online search request.[3]

15.     Lendio's marketing includes initial enticements for SBA loans, especially for women-owned small businesses like Just Cause, marketed as "bolt" loans with claims that processing time is significantly reduced.[4]

16.     Curious about what options Lendio might provide, Adams inquired further and ultimately received direct contact from Lendio sales representatives via email.

17.     Lendio disclosed that it was not a direct lender, but acted as a broker for businesses such as Just Cause to match a business with an appropriate lender to suit the business' need.

---

[2] https://www.sba.gov/funding-programs/loans (last visited Dec. 2, 2024).

[3] https://www.google.com/search?q=sba+loan&client=firefox-b-1-d&sca_esv=a62697bb36e69ea8&ei=ZmdOZ6vOJNuEwbkPgqCVwQY&ved=0ahUKEwirmZXKwYqKAxVbQjABHQJQJWgQ4dUDCA8&uact=5&oq=sba+loan&gs_lp=Egxnd3Mtd2l6LXNlcnAiCHNiYSBsb2FuMggQABiABBixAzIIEAAYgAQYsQMyBRAAGIAEMgsQABiABBixAxiDATIIEAAYgAQYsQMyBRAAGIAEMg4QABiABBiRAhixAxiKBTIIEAAYgAQYsQMyBRAAGIAEMgUQABiABEiAb1AAWIltcAJ4AZABAJgBdKAB_QWqAQM1LjO4AQPIAQD4AQGYAgygAq8GqAIKwgIUEAAYgAQYkQIYtAIYigUY6gLYAQHCAhAQABgDGLQCGGOoCGI8B2AEBwgIREC4YgAQYkQIY0QMYxwEYigXCAgsQABiABBiRAhiKBcICChAAGIAEGEMYigXCAhEQLhiABBixAxjRAxiHAcICCxAuGIAEGNEDGMcBwgIOEAAYgAQYsQMYgwEYigXCAiAQLhiABBiRAhjRAxjHARiKBRiXBRjcBBjeBBjgBNgBAsICDRAAGIAEGLEDGDEMGEMYigXCAhAQLhiABBjRAxhDGMcBGIoFwgIQEC4YgAQYQxjHARiKBRivAcICFhAuGIAEGLEDGNEDGMcBGIoFwgWYwEYxwEYigWYAwi6BgQIARgHugYGCAIQARgUkgcDNi40oAfSNw&sclient=gws-wiz-serp (last visited Dec. 2, 2024)

[4] https://www.lendio.com/industry/women/ (last visited Dec. 2, 2024).

18.     Lendio represented that it could obtain an SBA "bolt" loan for Just Cause and Lendio representatives offered to assist Just Cause in obtaining an SBA "bolt loan," representing that the loan could be obtained in a matter of two-three weeks.[5]

19.      Adams agreed to have Lendio assist in obtaining the SBA loan for Just Cause, completed the necessary application, and submitted requested documentation.

20.     On or about February 29, 2024, Lendio emailed Adams written confirmation that Just Cause had been approved for a $150,000 SBA loan through BayFirst National Bank.

21.     At the same time Just Cause was applying for and SBA loan, Lendio, through its agent Frank Tomasula, also pushed Just Cause into applying for a separate "bridge loan," representing that the SBA loan would take up to four weeks and that the bridge loan could be repaid with the SBA loan proceeds once received since the "bridge loan" provided quicker access to the working capital Just Cause sought.

22.     Needing the working capital, Just Cause agreed to apply for the bridge loan while at the same time completing the necessary paperwork for the BayFirst SBA loan that Lendio had represented via email  had already been approved.

23.     As a result, Just Cause applied for and received approval for the "bridge loan" of $100,000 from "OnDeck" a separate business loan provider.

24.     Just Cause would not have applied for this "bridge" loan through OnDeck but for Lendio's suggestion and its representation that the OnDeck loan could be repaid quickly once BayFirst funded the SBA "bolt" loan at the end of March 2024.

25.     The OnDeck "bridge loan" provided through Lendio was decidedly less favorable than the anticipated SBA loan, as OnDeck structured the loan as a 12 month loan payable in weekly

---

[5] See also, Randa Kriss, "SBA Bolt Loans: Everything You Need to Know", July 14, 2024 https://www.nerdwallet.com/article/small-business/sba-bolt-loan (last visited Dec. 2, 2024)

installments of $2,676.92 with an A.P.R. at an outrageously high 74.90% compared to SBA interest rates which have been ranging from 10-15% during 2024.

26.     Nevertheless, Just Cause agreed to the loan with OnDeck, based specifically on Lendio's representations that Just Cause had been approved by BayFirst for an SBA loan and that it would be only a few weeks (end of March 2024) until Just Cause received the BayFirst SBA loan, enabling Just Cause to pay off the OnDeck bridge loan.

27.     Just Cause completed and returned all requested documents from BayFirst by March 4, 2024.

28.     After Just Cause obtained the OnDeck loan, Lendio reversed course and notified Just Cause, on or about March 14, 2024, that Just Cause was "no longer eligible" for the SBA loan through BayFirst.

29.     Lendio blamed the change on BayFirst claiming that BayFirst had changed its lending guidelines and would no longer lend to "marketing" companies.

30.     Upon information and belief, this explanation is a ruse to cover Lendio's predatory "bait and switch" tactic of offering lower-cost loans but, in reality, selling higher-priced loans to small businesses which benefits Lendio in the form of higher commissions paid by the lenders.

31.     After learning of this deception, Adams attempted to contact Lendio representatives on multiple occasions including Frank Tomasula who failed and/or refused to respond to numerous telephone calls, voicemails, and text messages further confirming Lendio's predatory lending practices.

32.     Adams then contacted Lendio's customer service to complain and seek assistance, ultimately communicating with Aurin Manges, another Lendio representative.

33.    During this exchange, Lendio advised, in writing, that it maintained a "waiting period" policy, wherein new borrowers needed to pay at least 40% of the "current" loan before it would assist in obtaining another loan for businesses like Just Cause and that Just Cause would need to repay OnDeck for at least sixteen weeks before Lendio could secure a replacement loan rather than the four weeks Lendio had initially represented.

34.    Lendio never disclosed this "policy" before suggesting a "bridge loan" and, in fact, if this were, in fact, an actual policy, Lendio deceived Just Cause by selling a higher-priced loan knowing Just Cause would not qualify for a lower cost SBA loan if it, in fact, maintained this "waiting period" policy.

35.    Whether Lendio possessed a  "waiting period" policy or not, Lendio's actions trapped Just Cause into an outrageously high cost loan at great expense to Just Cause, which undermined the entire purpose of the loan.

36.    Further scrutiny of Lendio's marketing practices reveals that the SBA does not offer "bolt" loans, this is a marketing gimmick intended to convey speed and ease of access to SBA loans.

37.    As a result of Lendio's actions, Just Cause suffered significant hardship and financial losses, nearly bankrupting Just Cause and disrupting its ability to conduct business.

## CLASS ALLEGATIONS

38.    **Class Definition.**  Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23 on behalf of a class of similarly situated individuals (the "Class"), defined as follows:

> All businesses which obtained loans from OnDeck or other "bridge loan" lenders at Lendio's directive after Lendio first communicated acceptance for a separate SBA loan.

39.     Excluded from the Class and Subclasses are the following individuals and/or entities: Defendant's parents, subsidiaries, affiliates, officers and directors, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; any and all federal, state or local governments, including but not limited to its departments, agencies, divisions, bureaus, boards, sections, groups, counsels and/or subdivisions; and all judges assigned to hear any aspect of this litigation, as well as its immediate family members.

40.     Just Cause reserves the right under Federal Rule of Civil Procedure 23 to amend or modify the Class definition to include a broader scope, greater specificity, further division into subclasses, or limitations to particular issues.

41.     Just Cause reserves the right under Federal Rule of Civil Procedure 23(c)(4) to seek certification of particular issues.

42.     **Numerosity:** Upon information and belief, the Class consists of more than 40 members, as Defendant frequently markets its services to small businesses, including women owned businesses. Although the exact number and identities of Class members is presently unknown, that information can be ascertained through discovery. Class members may be identified through Defendant's own records, as Class members necessarily provided Defendant with their identifying information when they acquired the loans and, in addition, Defendant maintains information on each loan.

43.     **Commonality and Predominance**: Commonality requires that the Class members' claims depend upon a common contention such that determination of its truth or falsity will resolve an issue that is central to the validity of each claim in one stroke.  All members of the Class have been subject to and affected by a uniform course of conduct: specifically, being subjected to

Lendio's misrepresentations about qualifications for a SBA Loan and the need to first obtain a bridge loan.

44. **Typicality:** Just Cause's claims are typical of the claims of the Class. Just Cause and the Class Members all sustained injuries arising out of Lendio's uniform wrongful conduct.

45. **Adequacy:** Just Cause will fairly and adequately represent and protect the interest of the Class members. Just Cause's claims are made in a representative capacity on behalf of the Class members. Just Cause has no interests that are antagonistic to the interests of the other Class members. Just Cause has retained competent counsel to prosecute the case on behalf of the Plaintiff and the Class. Just Cause and Plaintiff's Counsel are committed to vigorously prosecuting this action on behalf of the Class Members.

46. **Superiority:** This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy as joinder of all parties is impracticable. The damages suffered by individual Class members will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the individual Class members to obtain effective relief from Defendants' misconduct. Even if Class members could mount such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be enhanced, and uniformity of decisions ensured.

8

## COUNT ONE:  FRAUDULENT MISREPRESENTATION
### On behalf of the Plaintiff and Class

47.     Plaintiff hereby restates all preceding paragraphs as if fully rewritten herein.

48.     Lendio, through its sales agents, made intentional and deceptive statements to Plaintiff and Class members with the intent to induce Plaintiff and Class members into entering a loan transaction at a higher cost than a standard SBA loan.

49.     To wit: Lendio intentionally misrepresented Plaintiff's eligibility for an SBA loan, Lendio intentionally misrepresented that the SBA loan would be funded "in a few weeks," and Lendio intentionally misrepresented that Plaintiff could obtain a short term "bridge loan" that could be repaid in a few weeks.

50.     Lendio also failed to disclose that it maintained a policy not to provide any additional loans to borrowers until at least "40%" of the original loan had been repaid, directly contravening the purpose of a "bridge loan."

51.     Lendio was aware at all times that Just Cause was relying on its representations.

52.     Based on the allegations herein, Lendio was aware at all times that Class members were also relying on substantially similar misrepresentations made to them as the misrepresentations made to Just Cause.

53.     Just Cause, in fact, justifiably relied on Lendio's representations, believing that the SBA loan had in fact been approved, as represented by Lendio, and that it would be forthcoming to cover the OnDeck loan, when in fact, no such approval existed, and Plaintiff was subsequently informed that it was no longer eligible for the SBA loan.

54.     Based on the allegations herein the Class Members also justifiably relied on Lendio's representations.

55. As a result of Defendant's fraudulent misrepresentations, Plaintiff suffered significant harm, including the payment of excessive interest payments on the OnDeck loan, damages arising from the inability to obtain the expected SBA loan, along with vast amounts of time spent seeking ways to mitigate the harm from the OnDeck loan.

56. As a result of Defendant's fraudulent misrepresentations, the Class Members suffered substantially similar financial harm as Just Cause, including the payment of excessive interest payments on bridge loans and damages arising for their inability to obtain the expected SBA Loan.

## COUNT TWO:  NEGLIGENT MISREPRESENTATION
### On behalf of the Plaintiff and Class

57. Plaintiff hereby restates all preceding paragraphs as if fully rewritten herein.

58. Lendio represented to Plaintiff and Class Members that their applications for a SBA loan had been approved and that the loan would be disbursed within weeks, failing to exercise reasonable care or due diligence in verifying the truthfulness of such representations.

59. Plaintiff and the Class Members, relying on Lendio's negligent misrepresentations, entered into loan agreements with high-cost bridge loan providers like OnDeck believing that the SBA loan would cover the debt.

60. The failure of Defendant to exercise reasonable care in confirming the approval of the SBA loan directly caused Plaintiff and the Class Members to incur the OnDeck loan and suffer financial harm, including excessive interest rates and repayment terms.

## COUNT THREE:  BREACH OF IMPLIED CONTRACT
### On behalf of the Plaintiff and Class

61. Plaintiff hereby restates all preceding paragraphs as if fully rewritten herein.

62.     Plaintiff and the Class members and Defendant each entered into an agreement or implied agreement whereby Defendant would assist Plaintiff and each Class member in securing an SBA loan to address its working capital needs.

63.     Defendant's actions in marketing and facilitating the SBA loan application constituted an agreement, either express or implied, that Defendant would procure the SBA loan for Plaintiff and each Class member or assist Plaintiff and each Class Member in obtaining such a loan.

64.     Based on the allegations herein, *supra*, Defendant breached this contract by failing to provide the SBA loan as represented and instead induced Plaintiff and each Class member to enter into a separate loan agreement with high-cost bridge lenders like OnDeck under false pretenses.

65.     Plaintiff and Class members each suffered harm as a result of Defendant's breach of contract, including the incurrence of an excessively high-interest loan, financial hardship due to the unfulfilled promise of an SBA loan, and the costs of replacement lending to retire the OnDeck loan.

## COUNT FOUR:  UNJUST ENRICHMENT
### On behalf of the Plaintiff and Class

66.     Plaintiff hereby restates all preceding paragraphs as if fully rewritten herein.

67.     Lendio has been unjustly enriched by receiving commissions and fees from the bridge loans provided to Plaintiff and Class members despite making false and misleading representations regarding the approval of an SBA loan and the terms of such a loan.

68.     Defendant induced Plaintiff and Class members to apply for the bridge loans, such as the OnDeck Loan obtained by the Plaintiff, based on misleading information that Plaintiff and Class members would receive a low-cost SBA loan, which was never forthcoming.

11

69.     Defendant's retention of the benefits, including commissions and fees associated with bridge loans like the OnDeck loan, at the expense of Plaintiff and Class members, constitutes unjust enrichment.

70.     It would be inequitable for Defendant to retain the benefit of these commissions and fees while Plaintiff and Class members suffer financial harm caused by Defendant's misrepresentations and failure to fulfill its promise to secure an SBA loan for Plaintiff and Class members.

## COUNT FIVE:  BREACH OF FIDUCIARY DUTY

71.     Plaintiff hereby restates all preceding paragraphs as if fully rewritten herein.

72.     Defendant and Plaintiff and the Defendant and Class members each entered into a fiduciary relationship in which Lendio, as a loan broker, owed Plaintiff and each Class member a duty of loyalty, honesty, and good faith.

73.     As a loan broker, Lendio had a duty to act in the best interests of the Plaintiff and each Class Member, to provide truthful information, and to act with due care and diligence in facilitating the loan process for Plaintiff and each Class member.

74.     Lendio breached its fiduciary duty to Plaintiff and each Class Member by misrepresenting the status of the Small Business Administration (SBA) loan approval.

75.     Specifically, Lendio represented that Plaintiff had been approved for a SBA loan through BayFirst National Bank, knowing that such approval was not secured.

76.     Based on the allegations herein, *supra*, Lendio made substantially similar misrepresentations to each Class member regarding approval for SBA loans knowing such approval was not secured.

77.     In addition, Lendio pushed Plaintiff and each Class member into applying for a high-cost bridge loan with companies like OnDeck under the pretense that the SBA loan would soon cover the bridge loan, which was not true.

78.     Defendant failed to disclose its commission structure and the fact that it stood to benefit more financially from facilitating higher-interest loans, like the OnDeck bridge loan, rather than the SBA loan.

79.     By doing so, Lendio disregarded its fiduciary duty to act in best interests of the Plaintiff and each Class member, leading Plaintiff and each Class member to enter into a loan agreement with OnDeck and/or other bridge loan lenders that were financially disadvantageous.

80.     As a result of Lendio's breach of fiduciary duty, Plaintiff and Class Members have suffered financial harm, including paying high-interest rates on their respective bridge loans, when it would have otherwise qualified for the lower-interest SBA loan. Additionally, Plaintiff and each Class member has suffered damages due to the delay in obtaining the SBA loan, further exacerbating its financial strain and causing harm.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff Just Cause Marketing, Inc., individually and on behalf of others similarly situated, hereby respectfully requests that the Court:

A.  Certify this case as a class action on behalf of the Class defined above, appoint Plaintiff as the Class representative, and appoint the undersigned counsel as Class counsel;

B.  Award judgment in favor of Plaintiff and the Class on Counts One through Five of the Complaint;

C.  Award Plaintiff and the Class damages related to the claims alleged;

D.  Award Plaintiff and the Class its costs and attorneys' fees; and

E.  Award such other and further relief as equity and justice may require.

Respectfully Submitted,

*/s/ Jeffrey A. Crossman*
Jeffrey A. Crossman (0073461)
Marc E. Dann (0039425)
Brian D. Flick (0081605)
DannLaw
15000 Madison Ave.
Lakewood, OH 44107
Telephone: (216) 373-0539
Facsimile: (216) 373-0536
notices@dannlaw.com
*Counsel for Plaintiff Just Cause Marketing, Inc.*

## DEMAND FOR JURY TRIAL

Plaintiff Just Cause Marketing, Inc. demands a trial by jury of any and all issues in this action so triable of right with the maximum number of jurors permitted by law.

*/s/ Jeffrey A. Crossman*
Jeffrey A. Crossman (0073461)
Marc E. Dann (0039425)
Brian D. Flick (0081605)
DannLaw
*Counsel for Plaintiff Just Cause Marketing, Inc.*